```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:05-CR-00030 |
| v. | : | **OPINION AND ORDER** |
| TRACY BUSCH | : |  |

This matter is before the Court on Defendant's Motion to Suppress (doc. 36) and the United States' Response (doc. 42). The Court held an evidentiary hearing on September 14, 2005.

I.  **BACKGROUND**

This case involves the entry of police officers into the apartment of Defendant's brother, Troy Busch, where they found and apprehended Defendant in the possession of a firearm. Defendant challenges the entry into the apartment as an unconstitutional warrantless search, and also challenges the admission of any subsequent statements as made without a knowing and intelligent waiver due to his alleged intoxication.

The basic facts of this case are as follows. Late in the evening of October 17, 2004, police officers responded to a shooting at 835 State Avenue, Cincinnati, where they received a description of the shooter and learned the victim had been shot twice with a small caliber gun (doc. 42). Only five minutes later, the dispatcher informed the officers that Tina Smith, Defendant's

mother, at 2940 Glenway Avenue, had called stating Defendant was out of control and armed with a gun (Id.).  At the September 14, 2005 hearing, Officer Dan Cavanaugh ("Cavanaugh") testified that he was among the officers who had first responded to the shooting at State Street, and that as the call to 2940 Glenway was less than one mile away, the officers believed it could be the same suspect.

Cavanaugh testified that he and three other officers went to 2940 Glenway Avenue, apartment one, where they met Ms. Smith and her son Paul, both of whom seemed shaken and fearful, and both of whom indicated Defendant was with his brother, Troy Busch ("Troy"), in apartment five at the same address.  Cavanaugh stated that Ms. Smith told the officers that Defendant was acting crazy and waving a gun.  Paul Busch repeated the same thing.

Cavanaugh and the other officers proceeded to Troy's basement apartment, which was situated across a courtyard and down some steps.  Cavanaugh testified that he led the way, and as he approached the door of the apartment he could hear two voices, one that sounded extremely agitated and aggressive, and a second voice that sounded softer and fearful.  Cavanaugh stated the door was cracked a bit such that he could make out some words, and he heard the aggressive voice state "owe me money," and then heard one of the voices say "gun."  At this point Cavanaugh and the other officers burst into the apartment and with guns drawn ordered the two men to put their hands up and get on the floor.  Cavanaugh

stated Defendant's clothing immediately attracted his attention, as Defendant's hooded sweatshirt and jeans matched the description of the suspect involved in the State Street shooting. According to Cavanaugh, Troy Busch immediately complied with the officer's order, while Defendant hesitated and turned to see the officers, but then went face down on a large chair with his hands out. Cavanaugh next saw Defendant reach for his waist, and at this moment pointed his gun at Defendant while another officer ordered Defendant to show his hands slowly. Defendant showed the officers the palms of his hands. Cavanaugh stated he and another officer grabbed Defendant by each arm, while a third officer recovered a .25 caliber pistol from Defendant's sweatshirt pocket.

The officers then arrested Defendant but did not read him his Miranda rights. Defendant was held in a police cruiser for several minutes while witnesses from the State Street shooting were brought over to identify him. Cavanaugh testified that he overheard no statements by Defendant at this time. Cavanaugh also testified that he had had previous encounters with Defendant, and did not notice he was intoxicated that evening.

Cincinnati Police Investigator Douglas Lindle ("Lindle") testified next, stating he was called in at 1:00 a.m. on October 18, 2004, to conduct an investigation of the events on State Street and Glenway Avenue. Lindle testified he interviewed Defendant at 3:00 A.M that morning. Lindle testified he read Defendant his

<u>Miranda</u> rights, and Defendant signed off on the police form indicating he had been notified of his rights. Such form was proffered and admitted at the hearing as the government's exhibit one. Lindle stated after Defendant was notified of his rights, Defendant, who was excited, spoke about spending the evening with his brother, Paul, and their visit to two bars. Lindle testified that when he observed Defendant, Defendant did not show any symptoms of intoxication. Lindle stated Defendant did not have slurred speech and walked normally. Lindle further stated Defendant did not want to talk about any encounter with a Hispanic male after leaving the second bar, and wanted to keep talking about the events in his brother's apartment. The interview, testified Lindle, lasted for about fifteen minutes, after which time Defendant asked for an attorney and no further statements were taken, other than regular booking identification questions.

The Court also heard testimony of Troy Busch, who stated that on the evening of October 17, 2004, Defendant awoke him by knocking on his door late at night, very intoxicated. Troy let Defendant enter, and testified that Defendant staggered inside. Troy testified that he and Defendant were on bad terms, that they argued, that Defendant asked him for money, and that he knew Defendant had a gun. The United States offered a taped interview of Troy Busch, completed at 2:23 a.m. on October 18, 2004, which essentially matched Troy's hearing testimony, in that he stated

4

Defendant hollered that he needed money and "was acting crazy."

Defendant's other brother Paul Busch, was subpoenaed for the hearing on September 14, 2005, but did not appear to testify. The Court accepted as fact from Defendant's counsel that should Paul Busch have appeared he would have testified that he made contact with Defendant at about 9:00 p.m. on October 17, 2004, and they went to a bar together. Paul Busch further would have testified that he observed his brother drink ten "jack and cokes," (a mixture of whiskey and coca-cola), and ingest ten Xanax bars (a prescription drug). Paul would have testified that Defendant was intoxicated and his speech was slurred when they parted ways that evening.

## II. DISCUSSION

At the hearing on this matter, the Court found only two issues are at stake, 1)the entry into the apartment where Defendant was found with a handgun, and 2)whether any of Defendant's statements should be suppressed as in contravention of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), for the lack of a knowing and voluntary waiver. Accordingly, the Court will focus its analysis on these issues.

Defendant argues the entry into the apartment was improper because the police officers lacked exigent circumstances to justify a warrantless entry (doc. 36). Next, Defendant argues he was intoxicated upon his arrest, so he lacked the capacity to

5

knowingly and intelligently waive his Miranda rights (Id.).

Defendant argues that the introduction of evidence obtained by impermissible techniques violates his right to due process (Id.). He therefore requests the Court to suppress all evidence obtained directly or indirectly from searches and seizures of himself, his residence and/or any automobiles to which he had access, and any identification evidence (Id.).

The government argues that Defendant's motion is without merit. First, the government argues that the Fourth Amendment does not apply to the entry of the officers into Defendant's brother's apartment because it was not an entry into Defendant's house (doc. 42). The United States argues under Minnesota v. Carter, 525 U.S. 83, 90 (1998), an overnight guest in a home may claim the protection of the Fourth Amendment, but not one who is merely present with the consent of the householder (Id.). The government argues that Defendant had no reasonable expectation of privacy in his brother's home (Id.).

Second, the government argues the officers entered lawfully due to exigent circumstances (Id.). They argue the officers had reason to believe Defendant was out of control and that he may have been involved in a shooting in close proximity (Id.). Officer Cavanaugh overheard the mention of a firearm, as he listened to a conversation where he knew Defendant was present (Id.). The officers believed Defendant posed a risk to others and

6

to himself, therefore, the government argues, exigent circumstances existed (Id.). Under the analysis of United States v. Rohrig, 98 F.3d 1506, 1515 (6th Cir. 1996), Defendants argue all the considerations in an exigent circumstances analysis are met (Id.). First, there was an immediate need for action because Defendant had a firearm and could have used it at any moment; second, the officers were furthering the government interest of protecting lives which justified the warrantless entry; and third, such interest outweighed Defendant's privacy interest (Id.).

As for Defendant's Miranda argument, the government argues the evidence will show Defendant's waiver was made intelligently and knowingly because he subsequently invoked his rights after having spoken to officers (Id.). The government argues this shows Defendant understood what his rights were and could invoke them if he chose to (Id.). As for Defendant's argument that he was intoxicated, the government argues the evidence still shows he knowingly and intelligently waived his rights, and in any event, intoxication does not preclude a waiver of rights made knowingly. United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (Id.). Finally, at the hearing, the government pointed out that testimony proffered by Defendant about his alleged intoxication would all relate to an earlier time in the evening, some three hours before the relevant time period of his statements.

Having reviewed this matter, the Court finds the

testimony of Officer Cavanaugh and Investigator Lindle highly credible. The Court need not reach the government's argument that Defendant had no expectation of privacy in his brother's apartment, because regardless of that question, it is evident the officers in this case acted under exigent circumstances that justified a warrantless entry.

The officers were in the neighborhood responding to a shooting at State Street, in close proximity to the apartment building. They reasonably inferred that the phone call from Defendant's mother about a person "out of control" and brandishing a handgun could be related to the State Street shooting. Upon arrival at the Glenway Avenue apartment building, they observed Defendant's mother and brother who were visibly shaken and afraid. They reasonably approached the apartment where Defendant was located with caution. Through the cracked door, Officer Cavanaugh heard a voice that sounded agitated and aggressive, and he heard the word "gun." Taken together, these circumstances show the officers had reason to believe that Defendant possessed a firearm and was out of control. They correctly found a need for immediate action, as Defendant may have posed a threat to himself, his brother Troy, or even the officers had they knocked on the door to request entry. The protection of life against this threat was sufficiently important to outweigh Defendant's expectation of privacy while in his brother's home. Finally, the door was

8

partially open such that Defendant's conversation could be overheard, thus diminishing Defendant's expectation of privacy. United States v. Rohrig, 98 F.3d 1506, 1518 (6th Cir. 1996).

As for Defendant's Miranda concern, the Court finds that he knowingly and intelligently signed the waiver form. No one testified at the hearing as to any statements Defendant made prior to signing the waiver. Any statements Defendant made during his interview with Investigator Lindel should be admissible. Clearly, when Defendant invoked his right to an attorney, questioning stopped and he merely answered routine questions for booking purposes. To whatever extent Defendant may have been intoxicated, if at all, the Court finds he was able to knowingly and intelligently waive his rights. United States v. Turner, 157 F.3d 552, 555-556 (citing United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995); United States v. Byrne, 83 F.3d 984, 989 (8th Cir. 1996).

### III. CONCLUSION

The Court finds credible the testimony of Officer Cavanaugh, and is convinced he and his fellow officers had justification based on exigent circumstances to enter the apartment where they found Defendant with a handgun. The Court further finds that Defendant voluntarily, knowingly, and intelligently waived his Miranda rights in the early morning of October 18, 2004. Consequently, the Court finds Defendant's motion without merit.

9

Accordingly, the Court hereby DENIES the Defendant's Motion to Suppress (doc. 36).

        SO ORDERED.

Dated: September 15, 2005       <u>s/S. Arthur Spiegel</u>
                                      S. Arthur Spiegel
                                      United States Senior District Judge