UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 1:05-cr-030 |
| v. | : | Judge Michael R. Barrett |
| TRACY J. BUSCH[1], | : | **ORDER GRANTING MOTION FOR** |
| Defendant. | : | **SENTENCE REDUCTION** |

This matter is before the Court on Defendant Tracy J. Busch's *pro se* motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Doc. 143, docketed 05/12/2025). In a separate filing, Defendant asked that his motion be expedited. (Doc. 144, docketed 05/12/2025). The government filed a (merits) response in opposition (Doc. 145), to which Defendant replied (Doc. 146, docketed 06/17/2025).

**I.     BACKGROUND**

**Conviction & Sentencing.** On September 21, 2005, a jury found Defendant guilty of one count of being a felon in possession of a firearm and ammunition and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1). (Doc. 55). He was sentenced to a term of 300 months of imprisonment (on each count, to be served concurrently), followed by five years of supervised release (on each count, to be served concurrently). (Docs. 72–74). Defendant's sentence was enhanced because he was classified as an "armed career criminal."

---

[1] Defendant, who is 48 years-old, is currently incarcerated at FCI Terre Haute. "Find an inmate," Federal Bureau of Prisons available at (https://www.bop.gov/inmate_loc/ (last visited 9/8/2025)).

1

**Facts Related to Defendant's Motion and Request for an Expedited Decision.** Defendant first sought compassionate release (in July 2020, during the COVID-19 pandemic) based on his medical conditions, which he believed put him at a higher risk of serious illness if he contracted the virus. (Doc. 133 PAGEID 892–98, 906). After review of his BOP health records and relying on then-current advice from the Centers for Disease Control and Prevention ("CDC"), the undersigned denied his motion for a sentence reduction. (Doc. 142).

In support of his current motion, Defendant explains that his release date is May 1, 2026.[2] In preparation for his release from custody, his case manager (at FCI Terre Haute) requested a 365-day placement in a halfway house. (Doc. 143 PAGEID 987, 996–97; Doc. 144 PAGEID 1008, 1016–19; Doc. 146 PAGEID 1062–63). Owing to a shortage of beds, he instead was offered 29 days in a halfway house in Columbus, Ohio, located more than 100 miles away from his home and family in Cincinnati. (*See id.*). Defendant asks the Court to "modify [his] sentence and have the end of [his] time in a halfway house as part of [his] probation." (Doc. 143 PAGEID 987; *see id.* PAGEID 997).

**II.    DISCUSSION**

**A.  Availability of Compassionate Release**

**Exhaustion.** A court "may not modify a term of imprisonment" based on a defendant's compassionate release motion until "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit has ruled that the exhaustion requirements

---

[2] May 1, 2026 is the projected release date listed for him on the BOP's website. "Find an inmate," Federal Bureau of Prisons available at (https://www.bop.gov/inmate loc/ (last visited 9/8/2025)).

found in § 3582(c)(1)(A) are mandatory and thus present "a glaring roadblock foreclosing compassionate release." *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020)).[3] Prisoners have two routes, then, to directly petition courts for compassionate release: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt ... of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A).

The United States does not contest the fact of exhaustion. (Doc. 145 PAGEID 1058 n.1).[4] Accordingly, the undersigned will proceed to the merits of Defendant's motion.

**B. The Court Finds that an Extraordinary and Compelling Reason Supports Release**

**Standard.** "The 'compassionate release' provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons in 'extraordinary and compelling' circumstances." *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). A three-step inquiry is necessary. *Id.* at 1101. "[A]t steps one and two of the § 3582(c)(1)(A) inquiry, district courts must find both that 'extraordinary and compelling reasons warrant [a sentence] reduction' and 'that such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id.* at 1109 (italics emphasis in original). Assuming an extraordinary and compelling reason is found, step three then requires consideration of the "applicable" sentencing factors listed in 18 U.S.C. § 3553(a). *Id.* at 1106 (citing *United States v. Ruffin*, 978 F.3d 1000, 1003–06 (6th Cir. 2020)).

---

[3] "The Court cannot *sua sponte* enforce the exhaustion claims-processing rule." *United States v. Brown*, No. 1:19-CR-129(2), 2024 WL 987528, at *2 n.1 (S.D. Ohio Mar. 7, 2024) (Dlott, J.) (citing, *inter alia*, *United States v. Miller*, No. 21-3311, 2021 WL 4467781, at *2 (6th Cir. Sept. 2, 2021)).

[4] Defendant submitted a request to the Warden on February 11, 2025, which was denied a week later. (Doc. 144 PAGEID 1009).

The policy statement of the Sentencing Commission appears at § 1B1.13 of the Guidelines. It (finally) was amended on November 1, 2023 ("Amendment 814") to clarify that it applies to motions filed by inmates (as well as by the Director of the BOP on an inmate's behalf).[5] Amendment 814 also added six circumstances that may justify compassionate release. *See* U.S.S.G. § 1B1.13(b)(1)–(6). Relevant here is the "catch-all" provision:

> (5) OTHER REASONS.—The defendant presents **any other circumstance** or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are **similar in gravity** to those described in paragraphs (1) through (4).

*Id.* § 1B1.13(b)(5) (emphasis added); *see United States v. Washington*, 122 F.4th 264, 267 (6th Cir. 2024) ("The first four enumerated circumstances ask: Is the defendant exceptionally sick, elderly, indispensable for family care, or was he the victim of abuse while in custody? *See* U.S.S.G. § 1B1.13(b)(1)–(4). The catch-all category then makes room for 'other circumstance[s]' 'similar in gravity' to these.[6] *Id.* § 1B1.13(b)(5).").[7]

**Resolution.**  Defendant, who has been incarcerated for more than 20 years, is fearful of being "released straight to the streets with nothing[.]" (Doc. 143 PAGEID 988; *see* Doc. 146

---

[5] Previously motions for compassionate release could only be brought by the Director of the Bureau of Prisons, "and as a result, defendants seldom were released." *United States v. Owens*, 996 F.3d 755, 758–59 (6th Cir. 2021). "The BOP used that power so 'sparingly' that the Department of Justice's Inspector General found in a 2013 report that an average of only 24 imprisoned persons were released each year by BOP motion. According to the same report, the BOP poorly managed the compassionate-release process and failed to establish timeliness standards for reviewing prisoner requests, causing delays so substantial that inmates sometimes died awaiting final BOP decisions." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020) (citations omitted). *Cf. Alam*, 960 F.3d at 835 ("No one contests that Congress made this change to increase access to compassionate release.").

[6] *See United States v. Lenhart*, No. 1:19-CR-673, 2025 WL 2097751, at *2 (N.D. Ohio July 25, 2025) ("The 'extraordinary and compelling' circumstances contemplated by Congress and the Sentencing Commission have traditionally focused on circumstances **personal** to the defendant or his family.") (citing *Washington*) (emphasis added).

[7] The last circumstance references an "unusually long sentence." *See* U.S.S.G. § 1B1.13(b)(6). But because the Sentencing Commission "overstepped its authority and issued a policy statement that is plainly unreasonable under the statute and in conflict with the separation of powers," it is (according to the Sixth Circuit) "invalid." *United States v. Bricker*, 135 F.4th 427, 430 (6th Cir. 2025).

4

PAGEID 1065 ("I was 27 years old when I got into this and being so young I've never had health insurance, I've never used a smart phone, I never even had a bank account. I'm 48 now and have a lot to learn.")). His case manager—a BOP employee—put in for 365 days of halfway house," and when he only "got approved for 29 days in a city 100 miles from where [he's] from, she "thought i[t] was a mistake because she ask for a year." (Doc. 143 PAGEID 987). Defendant represents that his case manager told him "[he'd] been locked up so long that [even] 6 months wouldn't be enough for [him] to accomplish everything [he'd] need." (*Id.*).[8]

The government concedes that "halfway house time may help Busch receive certain services and allow him to adjust to life following his sentence of imprisonment." (Doc. 145 PAGEID 1060 n.3). However, as it accurately points out, "It is the Bureau of Prisons, not this court, which has the authority to designate the place of a prisoner's imprisonment." (*Id.* PAGEID 1058 (quoting *United States v. Dougherty*, No. 2:18-cr-229-2, 2020 WL 1909964, at *2 (S.D. Ohio Apr. 20, 2020) (citing 18 U.S.C. § 3621(b) & *United States v. Townsend*, 631 F. App'x 373, 378 (6th Cir. 2015)))). "Moreover, the BOP's placement decisions, including determinations regarding halfway house and RRC placement, are expressly insulated from judicial review[.]" *Vanover v. Gilley*, No. 6:20-124-WOB, 2020 WL 4718758, at *2 (E.D. Ky. Aug. 13, 2020). But a court "may make **a non-binding recommendation**[9] for placement in a halfway house." (Doc. 145 PAGEID 1060 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *1–2 (E.D. Mich. May 15, 2020) (emphasis added))). And the government has no objection to this Court doing so

---

[8] As to why he refused the 29-day offer in a Columbus halfway house, Defendant explains: "I wouldn't of been able to even get a job because I'd of had to quit upon release from the halfway house to move back to Cincinnati and I didn't want to start off messing up my work history." (Doc. 143 PAGEID 997; *see* Doc. 146 PAGEID 1062–63).

[9] *See* 18 U.S.C. § 3621(b) ("Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have **no binding effect** on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.") (emphasis added).

"to the extent that bedspace allows BOP to place Busch in a halfway house for a longer period and other considerations known to BOP support such relief." (Doc. 145 PAGEID 1060 (citing *Murphy*, 2020 WL 2507619, at *2)).

After due consideration, the undersigned determines that Defendant has set forth an "extraordinary and compelling" reason in support of release that is consistent with the Sentencing Commission's catch-all provision (found at U.S.S.G. § 1B1.13(b)(5)). A BOP professional recommended that Defendant, who has been incarcerated for more than 20 years, complete his sentence with a 365-day placement in a halfway house. She thought the offer of less than 30 days (based on "facility resources") was a "mistake," telling Defendant that even a six-month placement would not prepare him for reentry into the general population. Under these circumstances, depriving Defendant "of a halfway house and its attendant support programs constitutes an extraordinary and compelling reason for a sentence modification." *United States v. Damell Owens*, No. 10-cr-432-1-DAP, ECF No. 951 at PAGEID 5632–33 (N.D. Ohio May 16, 2022).

The government recognizes that, "Given the nature of relief Busch seeks—additional time in a halfway house following a substantial sentence of imprisonment—several of the typically relevant §3553(a) factors are largely inapplicable here[.]" (Doc. 145 PAGEID 1060 n.3). But the one that *is* applicable—a means "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"—certainly weighs in favor of a sentence reduction. *See* 18 U.S.C. § 3553(a)(2)(D); *Owens*, ECF No. 951 at PAGEID 5634.

### III. CONCLUSION

Defendant Tracy J. Busch's *pro se* motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) (Doc. 143), as well as his separate request for an expedited decision (Doc. 144),

are hereby **GRANTED**.  Busch's term of incarceration is reduced to time served, with the first year of his supervised release to be served in a Residential Reentry Center ("RRC") in the Greater Cincinnati area.  However, placement in an RRC facility must be secured by the United States Probation Office before Busch is released from BOP custody.

    **IT IS SO ORDERED.**

                                                   /s/ *Michael R. Barrett*
                                                   JUDGE MICHAEL R. BARRETT